Good morning everyone. The first argued case this morning is number 17-2518 Advanced Touchscreen v. Samsung Electronics. Mr. McMahon. How do you please the court? I'm Emmett McMahon representing Advanced Touchscreen. By the way, Advanced Touchscreen is the entity that is owned by the inventor, Lester Ludwig, who is the named inventor on all four of the patents that issue, as well as the 068 patent that has been referenced in the briefs. There are four patents that were involved in this IPR appeal, and for reference to help the court, I'm going to refer primarily to the 303 patent. I'll also make references to the appendix when necessary, but the specification is the same. The PTAP board... I'm correct, am I not, that the patents were found invalid over two sets of references, Westermann and Bach, and then Urey. And your argument with regard to the Urey combination is restricted to the claim construction? Yes, your honor. That's correct. The finger flick and the recognizing. So if we were to agree with the board's claim construction on the Urey rejections, we wouldn't need to reach the others? That's correct. Thank you. On both of those, because the finger flick construction only involves three of the patents, your honor, but the recognizing claim construction is involved. That's what I understood. Thank you very much. All right. So with respect to the... I'm going to address the two fundamental errors which we have addressed in our briefs. That is that down below, the board really erred in circumventing the inoperability requirement of the law by holding that a physical substitution is not required. And then I'm going to address the finger flick construction. If the court has other questions, for example, on the recognizing, I'll be glad to address that to you. What is the inoperability requirement of the law? If two references each have components which reasonably put together anticipate what's claimed, what is the inoperability requirement of the law? You're not claiming that your invention is inoperable? No, we're not claiming that our invention, your honor. What we're claiming is that the combination that was alleged in this case was Westerman combined with Bach. And the evidence was that that combination, the Bach sensors that were alleged as part of the combination had oscillators in them. They would create so much distortion that the Westerman invention, as modified by Bach, would not operate as intended. And that was undisputed down below. We introduced evidence that the combination, the Bach sensors with the distortion or the crosstalk would create such debilitating crosstalk that a person of ordinary skill would not want to combine them and would not be motivated. The board found that the Bach sensors did not need to be physically incorporated into the combination. And that was the error, your honor. Yes, yes, they did do that. The board found that you didn't necessarily have to include the oscillation. It's not right that just simply to take the broad aspect of placing a transparent covering and ignoring the oscillation. And isn't your argument necessarily that you couldn't combine them that way? Yes, your honor. You could not combine Bach and Westerman and get a working device. Why couldn't you do what the board did? Well, that's claim one. I mean, they ignored the sensors in Bach one. And in essence, just determined as based on some general knowledge of skill in the art without any evidence that a person of ordinary skill would know to use a touchscreen. But that is really ground one that they refused to initiate the review upon. So the confusion arose because Samsung, it lumped its ground one, which was Westerman only under 103, and its ground two, which was Westerman and Bach. It lumped them together in one claim chart when it filed its touchpad or the transparent touchpad. There are two plus pages of single space structure. They're trying to support their claims based on Westerman. At the very end, again, they have ten lines that address Bach. And in those ten lines, they make nine references to the sensors or to a touchpad, which has to have sensors in order to be a touchpad. So the combination with Bach, and they refer to it as a fleeting, I think, reference to Bach, and it was, but it's the only reference to Bach. And every time they referred to Bach, they referred to the touchpad or the proximity sensors of Bach. And our evidence is that those, the combination, and this was again undisputed, that if someone were to combine the sensors of Bach into Westerman, as alleged in their petition, it would not work. Westerman would not be able to provide the multi-touch and the sensitivity that it had. That was undisputed. There was no evidence that conflicted that. So that's the record before us. When we introduced the evidence of the inoperability, then Samsung changed course and started to rely on the sensors, apparently in its brief now, and the sensors in did not propose replacing Westerman sensors with Bach sensors, but rather relies upon Bach, which expressed teaching as a transparent touchpad. That is inaccurate, Your Honor, and that's another part of this error here. If we're looking at it, the Bach, the combination did reference, it's on pages 880 and 881 of the appendix, where they refer to Bach and they refer to the Bach sensors. At no discussion about it did they ever allege that they would take, for example, a dumb screen, a piece of glass that's transparent from Bach, and put that into Westerman over the sensors in Westerman. Another point that's important to understand that I need to make is that in Westerman, the examiner had already determined that Westerman was not transparent. He made that determination twice in the prosecution of the 303 patent. He said Westerman fails to teach the transparent touchpad for positioning over a visual display. That was a decision by the examiner, the expert, and based on that decision, the board decided not to institute on ground one, Westerman only, and to only institute on the combination. So our position here is that the arguments relating to whether you can just take Westerman and make it transparent, were not properly before the board. They're not properly before this court. They were never, that is a ground that was never instituted upon. The ground involving Westerman included a combination with the Bach sensors. They would not work. And the law in the In Re Motec case is very clear, and I think the board erred, unfortunately, in that Bach sensors need not be incorporated into Westerman. That's just contrary to decades of jurisprudence from this court as well as others. In Re Motec, this court expressly addressed both issues. One issue being if you insert components from one piece of art into another one, you know, the person of ordinary skill is contemplating them, would it destroy the physical structure? That was an issue that was raised in that case, and the court said you don't have to address that. But those are two separate questions. In the same case, one paragraph below it, this court also addressed inoperability as a separate issue. So our point is it is an error of law for the board to have concluded that it need not determine, or need not dispense with the inoperability issue by merely concluding that physical substitutions are not required. It mixed the two tests that are distinct tests that were set out in the in the Westerman opinion. Then after it made that error, then it addressed this Westerman, and our position there again is that it really tried ground one, which it denied institution on, and we were denied an opportunity to process, an opportunity to present our case. A quote from the board states, this is an appendix 143, it's in each of the final decisions, but the board stated for both obviousness grounds based on Westerman alone, and in combination with Westerman, and not Bach, to teach the suggested censors. That sentence I respectfully submit is loaded with error. First of all, for both obviousness grounds based on Westerman alone, what was the board even inquiring about Westerman alone? It specifically said it was not going to institute based on Westerman alone. It should not have been addressing this issue in the decision. So it wrapped the analysis on Bach combination. That was outside the scope of what was set forth in the decision to institute. And then the last half of that sentence is even more error, because then the board said in combination with Bach, petition relies on Westerman and not Bach to teach the suggested censors. That's just not accurate either. As we stated in page 880 to 881 of the appendix, and the other ones involved in Samsung can't have its cake and eat it too. The examiners stated that the censors, that Westerman was not transparent. There's evidence in the prosecution that it had transistors. Our evidence was that transistors were not transparent at that time. Westerman, the expert from Samsung's can't have their cake and eat it too, is my point. The Westerman censors are okay, and that was not a transparent screen. That's what the evidence shows. The examiner believed it. The board refused to go forward with that. So where are you going to get the censors from? We're still trying to figure this out today based on the vague submission that they had in their chart. If they turn to Bach and try to use those censors, they won't work. It's inoperable, and that's not disputed. They get the censors from Westerman. It's opaque, and you don't have a transparent screen. So either way, they still have not satisfied their proof of establishing transparency. On the finger flick, I think the law is very clear there from the multi-tech versus Microsoft case that the statements made in a prosecution related, even if it's subsequently made, there were very clear statements of disavowal by the inventor, and the panel at the PTAB clearly erred in considering what it thought the examiner was thinking. The examiner's thoughts or comments are irrelevant. It's always been the law. What the inventor says is what needs to be looked at when you have a disavowal, and that's so the public will the inventor means by the scope of his invention. Thank you. Thank you. Mr. Drabinow. May it please the Court, Doug Hallward-Dreamer on behalf of Petitioner Samson. I think we need to establish that the petition did never suggest incorporating box censors. The Board made that finding specifically at page A55-56, and I have to apologize to the Court. I have been preparing with references to the 076 case, my friend, to the 303 case, but the substance is the same with respect to these two things. So at page A55-56, the Board specifically considered the inoperability argument and said that it is premised on an incorrect understanding of the combination, that it requires incorporating box censors, and that Petitioner had never suggested incorporating box censors, but instead taking the teaching of transparency from Bach, which was explicit in Bach, and applying that to Westerman's multi-touch screen. And that's true. It traces through perfectly from the petition, through institution, to the final written decision. In the petition, and this is at A5289, we said that it would be obvious and straightforward to use transparent materials to form Westerman's multi-touch screen as taught by Bach. So it's Westerman's multi-touch screen as taught by Bach to be transparent. In the institution decision... But your friend says it must include the oscillation aspect of Bach, when you say as taught by Bach. Well, that's not so, Your Honor. First of all, on the first page of Bach, oscillating censors are just one of three forms of capacitors that are described. The reference to using a transparent screen over the display, the video display unit, to make it a superior screen does not reference oscillators or any other particular form of capacitor, oscillators being only one embodiment of Bach's. And the other thing is, Your Honor, that we produced evidence in the form of Mr. Ward's testimony, which was credited at page A42, and seven different references that are cited in the paragraphs of his declaration that were relied on by the board of other references in the art at the time to make clear that transparent touch screens were common, and it would have been obvious to a person of ordinary skill in the art to make Westerman's multi-touch screen of transparent materials, i.e. conductive or dielectric materials, is what was stated in petition at page 20, and this is quoted in a block quote in the final written decision at page A41. That paragraph at petition page 20 includes references to the underlying prior art that make clear that it was possible to make a screen transparent, and those include, for example, a citation to Clancy. Now, in another paragraph, paragraph 79, which is quoted at length as really kind of a summary paragraph, it cites those references and their page numbers. In another paragraph, paragraph 68, it includes the parentheticals that describe what those things do. So, Clancy, for example, describes that you can make it of transparent substances, includes a reference to iridium tin oxide, which is a transparent conductor, or a description in gin of making it of transparent materials. Again, another reference to tin oxide. There's no requirement that all of the substance in the touchscreen be transparent. It's only that enough light comes through the touchscreen so that you can see the display below, and so the argument with respect to whether or not transistors in particular were transparent at the time is really neither here nor there. Again, the patent owner in their own filings here, in their own petition, acknowledged that there were transparent touchscreens at ATMs, gas stations, and the like that were common at the time, and again, our references, the seven of them cited on petition 20 that were incorporated by reference on A41, the final written decision, make clear that it was supported in Mr. Ward's testimony that this would have been obvious to a person of ordinary skill in the art. So again, and I didn't say, and I probably should have at the very outset, that Westerman does indeed suggest this. Now, I take issue with my friend's characterization that the board was relying on Westerman alone. It was not. It was relying on Westerman in light of Bach as it had in the institution decision. Now, in the institution decision, it's true that the board did not institute on Westerman alone, but they said in connection with instituting on Westerman in light of Bach that petitioner recognizes Westerman implicitly discloses transparent multi-touch screen and submits that Westerman in view of Bach would render the limitation obvious because Bach expressly discloses a transparent sensing screen positioned over the video display. And that's because one of ordinary skill in the art would have known which sensors to use with Bach in order to achieve transparency in Westerman? Well, there are, in the various references that are cited, there are a lot of ways in which transparent screens can be made. As I said before, one of the teachings is that the substrate does not need to be 100 percent translucent to be transparent. It just has to be enough light that comes through. There was a reference in the deposition, actually the same page of the appendix that my friend referred to in terms of our expert acknowledging that he did not know whether transistors in particular were transparent at the time, referenced the concept of screen door transparency. Of course, a screen is not 100 percent translucent, but when you look through it, you can see what's on the other side because there is enough light that passes through. It sounded to me as if your adversary's main argument was he believes that the board relied on the sensors. Well, the board made very clear that it was relying on Westerman, and Westerman has... Westerman suggests the benefits of transparency. And Westerman suggests the benefits of transparency. Bach has transparency. They say, well, but instead of just combining Bach and Westerman, which your adversary thinks happens, Bach entirely along with Bach's sensors. Right. Your argument is that the board was combining Westerman and Bach, but finding some sensors elsewhere... In Westerman. That would achieve the result. That's right, because Westerman had its own sensors. Because, you know, that elides the operability problem. That's right, and in fact, would you agree that there is an operability problem if the sensors from Bach needed to be incorporated with Westerman to achieve the 103? I don't think so, because there is an alternative argument that the board also agreed with us that the problems that are identified in supposedly combining Bach's oscillating sensors with Westerman are crosstalk and noise. There are a lot of ways to address crosstalk and noise, and those are addressed in Westerman itself, as well as in Bach. Bach describes shielding. Westerman describes selective accessing through multiplexing, as well as filtering and smoothing. So there are ways to address that, but we don't need to rely on that, because, as the board specifically found, this is on page A56, again, of the 076, is that... So what's our standard of review from this isolated question of whether or not the board fetched the sensors out of Bach, as well as just fetching the notion of a transparency? Well, it's substantial evidence... Is that part of the factual inquiry? It is part of the factual inquiry in terms of what are the teachings that are being combined, and they say at page 55 to 56, Petitioner did not propose such a substitution of Bach sensors. More importantly, Westerman reasonably suggests using its own sensors and circuitry in a transparent multi-touch surface, and they cite for that two different disclosures. One about the fact that multi-touch pad reprogrammably can move the keys around. The keys are not affixed on the multi-touch screen, but instead they move around, which suggests that the light is coming up from beneath to show onto the surface. And more specifically, there is a disclosure at claim 10, which is column 62, lines 3 to 4, of fabricating the multi-touch surface on the LCD display underneath. Now, that language of claim 10 was not something that the examiner considered when the examiner was looking at Westerman, and that's one of the reasons that the board did institute on this issue. Again, we never argued that Westerman itself taught transparency. We said it was implicit. The board acknowledged that when it instituted on Westerman and Bach. So it was consistent all the way through, from the petition institution to final written decision. What's the difference between teaching and being implicit? What's that? What's the difference between a reference that teaches and a reference that has something that jumps out of it because it's implicit? Well, I think we were being conservative. The board was being conservative. One of the arguments that the patent owner is making is that Westerman somehow teaches away from transparency. To consider teaching away, you have to look at what's being borrowed. What's the new learning that's being applied? So the learning being applied to Westerman is transparency. There's nothing in Westerman that teaches away from flexibility. What is it in Westerman that makes transparency implicit? Well, specifically, it's the fact that you have the light shining up through the multi-touch surface so that you can move the keys around depending upon where you put your fingers. So that suggests that the light is coming through. And then when it suggests putting the multi-touch surface, fabricating it on the LCD display below, again suggests that the light is coming through. Now, whether that was enough light to qualify as transparent or not, you know, it's silent as to that. That's why we propose combining implicit teaching. Would Westerman work without this light coming through? What's that? Would Westerman function without the light coming through? No, it wouldn't function without at least some light coming through, Your Honor. Again, whether that's enough to be transparent, I don't know. But we didn't rely on it for that purpose because Bach explicitly called out making its sensor a surface of transparent materials. And again, there are many, many other references that talk about using transparent materials to make touchpads and touchscreens. That was common at the time the petitioner acknowledged it in their own patent in the background where they talk about ATMs and gas stations and the like. That's really not disputed. And in fact, their own patent doesn't say how you do that precisely because everybody would have known how you make the touchpads. How do you respond to your adversary's finger flick argument? The finger flick argument, Your Honor, is based on a mischaracterization of the prosecution history of the 068 patent. Because of the public notice function of patents, it must be clear and unmistakable that there's been a disavowal. And the perspective is that a reasonable competitor, a third person looking at this. The petitioner proposes the language gain speed as it reaches the end for a flick, that that's essential. There was only one time in the entire 068 prosecution history that they used that phrase, gain speeds. It was in the first instance. The examiner rejected it because it was not supported by the original disclosure. And then they came back and tried different approaches. Ultimately, as is acknowledged in the reply brief of the patent owner, they relied on an argument that they were asserting the customary usage of the word flick. And for that customary usage, they relied on other references that are indistinguishable from Harrison. So, for example, at, this is at A4062, one of the references they used, it says, the direction of the flick gesture is an important aspect as left to right flick is mapped to a different function than left to right flick. Flicking from left to right to left will turn to the next page, whereas left to right flick will turn to the previous page. That language, which says nothing about gain speed or acceleration, is indistinguishable from the disclosure of Harrison, which refers to the same gesture as a flick. So, they did not stand on a definition of a flick that gains speed or accelerates. Again, once the examiner rejected that, those words, gain speed or accelerate or increase, we did a search of the entire exhibit 2007. Those words don't appear again. Instead, as acknowledged in their own reply, they went to customary usage and that customary usage by their own exhibits was indistinguishable from Harrison. Thank you very much. Okay, thank you. Mr. McMahon. Thank you, Your Honor. I would dispute counsel's statement first at back, disclose multiple embodiments. At the first page, it refers to different types of sensors, but those are the sensors that Bach was improving upon. These are not different embodiments. This is what they were improving upon. There's only one embodiment in Bach and that is the oscillating sensors, which, by the way, it is a sensor for many, many things, a very high-powered sensor that can be used in an opaque wall, for example. A couple lines that mention transparency, it also says it's not to be touched. And the other one, it mentions they have rubber over it. So the Bach sensor, to the extent it discloses some kind of transparency, it is not to be touched. We're not claiming that Dr. Ludwig invented touchscreens. The discussion that counsel just made about whether Westermann implicitly discloses touchscreens, whether Westermann's, you know, what its sensors may have done, I mean, a lot of that discussion is, again, all claim one, I'm sorry, ground one, that was not under review. We're spending a lot of time addressing a ground that the board decided not to institute that on. Judge Clevenger questioned some about the sensors and could they be obtained elsewhere. There is a problem here. That is the question that we have. Samsung had the burden to prove how this combination would work. The courts clearly say that. The sensors are very important for us to come up, you know, and question. We still don't know today what their combination is. They're saying they would come from somewhere else, but we don't know where they're from. Harrison, on the finger flick, it never addressed speed. It only looks to direction, and that's why the statements that the inventor made were clear and unequivocal. They were actually made twice, where he said the finger flick is not a drag, it accelerates speed. That's what he told the public his invention was. Thank you very much. Thank you. Thank you both. The case is taken under submission.